UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NATHANIEL HENRICKSEN,**                Chapter 7
    Debtor                                Case No. 11-10785-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**CHERYL LaLONDE,**
    Plaintiff
v.                                        Adv. P. No. 11-1150
**NATHANIEL HENRICKSEN,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the Motion for Summary Judgment filed by the Defendant, Nathaniel Henricksen (the "Defendant" or the "Debtor" or "Henricksen"), and the Response filed by the Plaintiff, Cheryl LaLonde (the "Plaintiff" or "LaLonde"). The Court heard the Motion on October 19, 2011 and took the matter under advisement.

    The Plaintiff appeared pro se at the October 19, 2011 hearing. The Court observed that her Complaint was "skeletal" and that she failed to expressly set forth alleged misrepresentations made by the Defendant with intent to deceive upon which she relied, as well as how she intended to prove that the Defendant acted willfully and maliciously. The Court afforded the Plaintiff an opportunity to file an Affidavit detailing the

1

misrepresentations and how she intended to prove that the Defendant injured her or her property.

The Plaintiff filed an Affidavit on October 31, 2011. The Defendant did not file a Response to the Affidavit.

## II. FACTS

The Debtor filed a Chapter 7 petition on January 31, 2011. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, he listed Cheryl and Elizabeth LaLonde as the holders of a claim for attorney's fees in the sum of $26,000. On May 2, 2011, LaLonde timely filed a "Complaint Objecting to Dischargeability of Indebtedness."

Pursuant to her Complaint, the Plaintiff alleged that she and the Defendant entered into a contract for the construction of a handicapped accessible addition to her mother's home located at 231 Pleasant Street, Marblehead, Massachusetts (the "Property") for a price of $162,625.25. She further alleged that she proffered two progress payments to the Defendant totaling $97,575.16, "which payments were obtained by the Defendant by false pretenses, false representations and fraud." The Plaintiff also alleged that the Defendant violated Mass. Gen. Laws ch. 142A when he failed to perform the contract and walked off the job.

The Plaintiff averred that Henricksen commenced an action against her in the Essex County Superior Court, Department of the Trial Court, seeking damages of $86,461.30, requiring her to engage legal counsel. The Plaintiff filed an Answer to the Complaint and a Counterclaim pursuant to Mass. Gen. Laws ch. 93A. The Plaintiff averred that the

Superior Court dismissed Henricksen's Complaint and awarded her damages for violation of ch. 93A in the sum of $25 and attorney's fees in the sum of $23,475 and costs.

Based upon those allegations, the Plaintiff formulated two counts in her Complaint filed in this Court, which she captioned as follows: Willful and Malicious Injury (11 U.S.C. § 523(a)(6)); and Violation of G.L. c. 93A. She cited 11 U.S.C. § 523(a)(2)(A) in the second count. In her Complaint, the Plaintiff blurred the causes of action under § 523(a)(6) and (a)(2)(A).

In summary, the Plaintiff predicated Count I of the Complaint on allegations that Henricksen's conduct in walking off the job left her without a handicapped accessible home that could be occupied. Count I also contains conclusory allegations that Henricksen's conduct caused "willful and malicious injury with knowledge that his actions would harm the Plaintiff;" was a wrongful conversion of the Plaintiff's money, resulting in "deliberate and intentional breach of contract that caused Plaintiff's willful and malicious injury;" and was a conversion of $97,576.16, which was "obtained by the Defendant by false pretenses, false representations and fraud result[ing] in willful and malicious injury." As noted above, Count II states a claim for violation of Mass. Gen. Laws ch. 93A and includes only a single reference to 11 U.S.C. § 523(a)(2)(A).

The Defendant answered the Complaint, raising six affirmative defenses, and filed a Motion for Summary Judgment. His first affirmative defense is failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In support of his Motion, he stated:

3

> The parties now before the Court have already litigated the material issues in this case relevant to liability under both 11 U.S.C. § 523(a)(2) and § 523(a)(6). The debtor submits that the parties are collaterally estopped from contesting the state court's detailed findings and rulings after trial on the merits. Although the state court found that the defendant-debtor violated M.G.L. 93A [sic], it also found that the plaintiff-creditor suffered no damage as a result of the violation. This is the central fact that forms the basis of this motion and requires that the Court to rule in the debtor's favor.

The Defendant also submitted the official transcript containing the Findings of Fact and Rulings of Law from the Superior Court action, and an Affidavit in which he listed expenses incurred for which he allegedly was not compensated. He stated "I received only $97,575.16 from Ms. LaLonde and expended $212,313.77 on the job."

In his brief in support of his Motion for Summary Judgment, the Defendant argued that collateral estoppel applies to this case, citing Stoehr v. Mohamed, 244 F.3d 206, 208 (1st Cir. 2001). He maintained that the Superior Court determined that, although there was no dispute that the Defendant performed some, but not all, of the work required by the contract and that the Plaintiff paid him $97,575.16, the Plaintiff was required to complete the job with other contractors, expending $50,868.75, for a total of $148,443.91. According to the Defendant, the Plaintiff saved $14,181.34 and thus suffered no harm for purposes of 11 U.S.C. § 523(a)(6), and no net damages, a necessary element to establish the nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A). See Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).

### III. THE STATE COURT'S FINDINGS OF FACT AND RULINGS OF LAW

The Superior Court conducted a three-day trial on the merits of the Defendant's

Complaint and the Plaintiff's Counterclaim. It delivered oral findings of fact and rulings of law on December 30, 2009. As noted, the Defendant attached a copy of the transcript to his Motion for Summary Judgment.

In summary, the Superior Court found that the Plaintiff and the Defendant entered into a written contract on June 24, 2005 for the construction of a handicapped accessible entrance to the Property for a price of $162,625.25. The contract required all changes to be made in writing. No completion date was specified in the contract, but the parties had an oral understanding that the time period should be a reasonable one determined by industry standards. The Plaintiff gave the Defendant $48,787.50 "up front to commence work." Transcript at 5.

According to the Superior Court, a problem arose almost immediately with respect to the level of the entranceway. The Defendant and his agents poured the foundation higher than what was specified in the plans, although the result was to make LaLonde's living space flush with that of her mother's living space. Nevertheless, the result was not what the Plaintiff wanted or what she had contracted for and her basement ceiling was higher than permitted by local regulations. The state court found, however, that the Plaintiff agreed to live with the change on the condition that the Defendant would, at his expense, make changes that would correct the problems with the higher exterior foundation. Transcript at 6.

On September 30, 2005, the Plaintiff paid the Defendant a second installment of $48,787.50. Work continued but the parties agreed to alter the contract to reflect changes

5

relating to a stove, and extra costs for an exterior door and other items. In mid-December, Henricksen had not completed the job. Work on the project had tapered off and the finish carpenter, who was the only person working, finally stopped appearing at the site. The Plaintiff attempted to contact the Defendant by telephone but was unsuccessful. She contacted her architect who eventually was able to reach the Defendant. In January 2006, the parties walked through the premises and prepared a punch list of items of unfinished work. The Superior Court found that on February 6, 2006 the Defendant, following receipt of a punch list, indicated "essentially that he had done all the work provided for in the contract up to that point in time; that to the extent that there was work left to be done, it was delayed by changes that Ms. Lalonde[1] had requested; and that until certain items that remained on order as a result of the changes had arrived, he would be unable to finish." Transcript at 7-8.

The Superior Court determined that when the Defendant walked off the job in mid-December there were many items which had not been completed which should have been completed and that the failure to complete them was unrelated to back-ordered items. Additionally, it found that some items were not done in accordance with the contract and others were not done in a workmanlike manner. The court cited as examples: infiltration of the insulation into air ducts, unconnected plumbing, gaps in the barn board installed in the main living area, an improperly installed bathroom door, and leaky gutters, although

---

[1] The Court notes that the Superior Court referred to the Plaintiff as "Lalonde," although in filings with this Court the Plaintiff spelled her name, "LaLonde."

there were other problems. The Superior Court found that the most significant problems were associated with exterior access. The Defendant had constructed a masonry patio with a ramp leading to the driveway, but the ramp was steep and required handrails that were not fully installed. Additionally, the rear deck was wholly inaccessible to the Plaintiff because it was at a lower level than the bedroom. Although the Plaintiff paid for changes which the parties orally agreed to, some changes had not been billed as of December 2005, including door and window upgrades, and electrical and plumbing extras. Those changes totaled $5,948.25. Henricksen billed for those changes on March 28, 2006, but the Plaintiff never paid his invoice. The court also found that the cost of the masonry patio and pergola was $10,766 and that the Plaintiff did not pay for the portion of the work attributable to contractual changes. The court itemized numerous other tasks required to bring the premises roughly to the condition specified in the contract, including $36,208.56 paid to a contractor engaged by the Plaintiff identified as Leland Hussey, and $14,660 for work that remained to be done, for a total of $50,868.56.

In its rulings of law, the Superior Court concluded that "Mr. Henricksen had breached the material terms of the contract," Transcript at 14, and that Ms. LaLonde was relieved of her obligations to make further payments under the contract or for changes that had been made. He stated "Ms. Lalonde is entitled to damages for the breach." Transcript at 16. The court also stated:

> The court has found that Ms. Lalonde had paid to Mr. Henricksen $97,575.16 and that she had paid to Mr. Hussey $36,208.75, and that she would have to pay an additional $14,660 to get the premises into the condition roughly that

7

> they [sic] would be had the contract been performed. Thus, her total cost to get what she originally contracted for would be $148,443.91. The original contract price was $162,625.25, more than . . . Ms. Lalonde's total of actual or anticipated payments. Therefore, as it turns out, Ms. Lalonde has suffered no net damages and she is thus unable to recover on the contract-based claims.

Transcript at 15-16. Turning to the Plaintiff's claim under ch. 93A, the Superior Court ruled that Henricksen violated Mass. Gen. Laws ch. 142A, § 17(2) by abandoning the job, a per se violation of ch. 93A. The court stated:

> Whereas here no actual damages are shown, the claimant is entitled to nominal damages if the claimant has otherwise suffered injury. In my view here, therefore, Ms. Lalonde is entitled to nominal damages, $25 as set by statute. And the statute allows for the recovery of attorney's fees.
>
> ***
>
> The prerequisite to an award of fees is that the 93A violation occurred and that there was resulting injury in some form to the claimant.
>
> Here . . . there was a Chapter 93A violation, that is to say, walking off the job, and there was injury resulting to Ms. Lalonde; *not financial injury*, but she did have to go to the effort to find a new contractor to finish the job.

Transcript at 16-18 (emphasis supplied). Finding that the Plaintiff was entitled to attorney's fees, the Superior Court observed the following:

> Given the condition of the building, at the time Ms. Lalonde had good reason to believe that the amount that it would cost to bring the premises up to speed would exceed the balance of the contract, and that fact, among others, constituted justification for the meticulous efforts of counsel to establish that nature of the problems that existed as a result of the abandonment of the project by Mr. Henricksen. . . .

Accordingly, the court awarded the Plaintiff $23,475 in attorney's fees. Judgment entered on December 30, 2009. Neither Henricksen nor the Plaintiff appealed.

## IV. THE PLAINTIFF'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT AND AFFIDAVIT

In her Response to the Defendant's Motion for Summary Judgment, the Plaintiff outlined numerous deficiencies associated with the project. Additionally, she disputed the Defendant's claim, set forth in his Affidavit, that he expended over $200,000 on the project. The Plaintiff stated that "I have spent $50,000 since he left, which does not include corrections needed to the addition."

In her Affidavit, the Plaintiff also represented that the Defendant did not perform the contract properly and on numerous occasions lied to her when he stated that he would correct problems and would meet the completion date of December 9, 2005.[2] She added: "I am disabled, of limited financial means and have recently been informed by Continental Construction Group . . . that it will cost an estimated $12,600.00 to make my residence handicap accessible."

## V. DISCUSSION

A. <u>Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 56(a) made applicable to this proceeding by Fed. R. Bankr. P. 7056, "the court shall grant summary judgment if the movant shows that there is not genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The United States Court of Appeals for the First Circuit has stated:

---

[2] Notably, the Superior Court determined that the parties had not agreed to a date certain for the completion of the project.

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)) (citations omitted, footnote omitted).  *See also* In re Kurak, 409 B.R. 259, 263–64 (Bankr. D. Mass.2009), *aff'd* South Point Inc. v. Agin, 433 B.R. 52 (D. Mass. 2010).

    B. Analysis

The Defendant relies upon the decision of the Essex County Superior Court, dictated on December 30, 2009, to support his Motion for Summary Judgment. As summarized above, the Superior Court made detailed findings of fact and rulings of law with respect to the Plaintiff's Counterclaims for breach of contract and violation of Mass. Gen. Laws ch. 93A. Notably, it issued its findings in December of 2009 after a three-day trial with respect to a contract dated June 24, 2005. Accordingly, approximately four years have passed since the Defendant's abandonment of the job and, approximately two years have passed since the Superior Court issued its decision in which it thoroughly and methodically considered the Plaintiff's damages arising from the construction contract, finding none. The Superior Court, however, awarded the Plaintiff nominal damages of $25 under Ch. 93A and attorney's fees. That award did not relate to any injury arising out of the construction

contract *per se,* but rather the harm caused by the Plaintiff's need to defend the Defendant's claim and engage another contractor to correct mistakes and complete the project. The state court specifically determined that the "injury resulting . . . [was] . . . not financial injury, but . . . the effort to find a new contractor to finish the job." The Superior Court noted the level of detail that had to be attended to at the trial with respect to the various aspects of the job and their costs. Indeed, the court noted that the Plaintiff was "under the gun" in terms of filing her ch. 93A claim because she was only in the middle of correcting deficiencies. Thus, the court observed that legal fees were justified because of "the meticulous efforts of counsel to establish that [sic] nature of the problems that existed as a result of the abandonment." Thus, if the Plaintiff was aggrieved with respect to the Superior Court's findings as to her contract damages, her remedy was an appeal. In effect, she now asks this Court to find that the decision of the Superior Court was erroneous as she suffered considerable damages and that this Court should find that her legal fees are nondischargeable.

Damages are a necessary element of proof for a successful claim for breach of contract, willful and malicious injury, and fraudulent misrepresentations. "In order to sustain . . .[a] . . . breach of contract claim, plaintiffs must plead: (1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) *that plaintiffs were damaged*. Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citing Singarella v. City of Boston, 342 Mass. 385, 173 N.E.2d 290, 291 (1961); Petricca v. Simpson,

11

862 F.Supp. 13, 17 (D. Mass.1994)) (emphasis supplied).  The Superior Court determined that the Plaintiff did not establish entitlement to a damage award.

With respect to a claim under 11 U.S.C. § 523(a)(6), this Court, in Bauer v. Colokathis (In re Colokathis), 417 B.R. 150  (Bankr. D. Mass. 2009), observed the following:

> Construing Geiger and Printy, together this Court concludes that, for an exception to discharge under 11 U.S.C. § 523(a)(6) to apply, the creditor has the burden of showing . . . that 1) the creditor suffered injury; 2) the debtor intended to cause the injury or that there was substantial certainty that the injury would occur; and 3) the debtor had no justification or excuse for the action resulting in injury. This is consistent with the Slosberg court's view that although "the terms [willful and malicious] might share elements, i.e., they both require that the act itself be intentional, they must have independent significance. In re Geiger should not be read to collapse the two elements into one." Slosberg, 225 B.R. at 19–20 (citations omitted).

In re Colokathis, 417 B.R. at 157-58 (citing  Kawaauhau v. Geiger, 523 U.S. 57 (1998); Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853 (1st Cir.1997); and McAlister v. Slosberg (In re Slosberg), 225 B.R. 9  (Bankr. D. Me. 1998)).  *See also* Liddell v. Peckham (In re Peckham), 442 B.R. 62, 76-77 (Bankr. D. Mass. 2010); Hermosilla v. Hermosilla (In re Hermosilla), 430 B.R. 13, 22 (Bankr. D. Mass. 2010).  In Geiger, the Supreme Court observed;

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

12

523 U.S. at 61–62.  As a result of the Supreme Court's decision, actions of the debtor which simply cause injury, but which are not deliberately undertaken, are not excepted from discharge.  In re Peckham, 442 B.R. at 78.  Because the Plaintiff did not allege that she suffered any personal injuries, the only injuries pertinent to the adversary proceeding are those allegedly caused to the Property.  Actual damages and loss are an essential element of an intentional tort.  Thus, willful and malicious injuries can be measured by monetary damages to property and were so measured by the Superior Court.  The Plaintiff's only injuries related to the need to defend Henricksen's state court complaint and the inconvenience of engaging another contractor.  Those injuries were not the result of any willful or malicious conduct on the part of the Defendant deliberately undertaken to harm the Plaintiff's Property.  The Plaintiff's Complaint and Affidavit fail to set forth allegations that would permit a finding that there is a nondischargeable debt in view of the Supreme Court's interpretation of § 532(a)(6).

In Buckland v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009), the United States Bankruptcy Appellate Panel for the First Circuit set forth the applicable elements of a cause of action under 11 U.S.C. § 523(a)(2)(A).  It stated:

> Pursuant to § 523(a)(2)(A), a monetary debt is nondischargeable to the extent the debt is obtained by "false pretenses, a false representation, or actual fraud."
>
> \*\*\*
>
> [T]o establish that a debt is nondischargeable under this section based on false pretenses or false representations, a creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless

13

> > disregard of the truth; (2) the debtor intended to deceive; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement *caused damage*. [McCory v.] Spigel, 260 F.3d [27] at 32 [(1st Cir. 2001)](citing Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir.1997)). "The first two elements of the Palmacci test describe the conduct and scienter required to show the debtor's fraudulent conduct generally . . . [while] . . . [t]he last four elements embody the requirement that the creditor's claim must arise as a direct result of the debtor's fraud." Aoki v. Atto Corp. (In re Aoki), 323 B.R. 803, 814 (1st Cir. BAP 2005) (citing Spigel, 260 F.3d at 32). The party seeking to except the debt from discharge bears the burden of proving each element by a preponderance of the evidence. Spigel, 260 F.3d at 32.
>
> In re Stanley-Snow, 405 B.R. at 18.  Thus, a plaintiff must establish that she was damaged as a result of any alleged fraud.

Based upon the authorities cited, it is clear that to prevail on her claims under either § 523(a)(2)(A) or § 523(a)(6), the Plaintiff must establish that she suffered damages of some sort that were either due to the Defendant's willful or malicious conduct or the result of his false representations or actual fraud.  The Defendant maintains that the issue of the Plaintiff's damages was resolved by the Superior Court and collateral estoppel prevents relitigation of that issue which is a critical element of claims under either § 523(a)(2)(A) and § 523(a)(6).  For collateral estoppel to apply, this Court must conclude that the Superior Court's decision relative to the Plaintiff's contractual damages is binding relative to the Plaintiff's present claims.

In Altman v. Johnson (In re Johnson), 445 B.R. 50 (Bankr. D. Mass. 2011), this Court stated:

> "'Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment

rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered.' " *61 Silva v. Commonwealth of Massachusetts Land Court, 351 Fed.Appx. 450, 457–58 (1st Cir. 2009) (quoting Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir.2008), cert. denied, __ U.S. __, 129 S.Ct. 2020, 173 L.Ed.2d 1088 (2009)). " 'Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion).' " Silva, 351 Fed.Appx. at 458 (quoting Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir.2008)).

According to the First Circuit in Silva,

> [T]he Supreme Judicial Court recently stated that issue preclusion applies when (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, [4] the issue decided in the prior adjudication must have been essential to the earlier judgment. Massachusetts courts also require that [5] appellate review must have been available in the earlier case before issue preclusion will arise.

351 Fed.Appx. at 458–59 (citations omitted).

Johnson, 445 B.R. at 60-61 (footnote omitted). *See also* Buckland v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009); Liddell v. Peckham (In re Peckham), 442 B.R. 62, 76-77 (Bankr. D. Mass. 2010).

The Court finds that all the elements required to apply collateral estoppel are present in the instant case. There was a judgment on the merits after actual litigation; the parties in the state court proceeding are the same as the parties in the instant case; the issue of damages is identical and was decided by the Superior Court; and appellate review was available. Because the Plaintiff has failed to posit damages other than her attorney's fees

15

which were awarded pursuant to her ch. 93A claim and not for any cause of action arising out of the construction contract itself, the Court finds that the Defendant has established that there are no issues of material fact in dispute.

Moreover, as the Court stated in <u>In re Stanley-Snow</u>,

> The U.S. Court of Appeals for the First Circuit has noted that "Chapter 93A violations and fraud are not synonymous, and that Chapter 93A liability may be premised on conduct other than fraud." <u>Stoehr v. Mohamed</u>, 244 F.3d 206, 209 (1st Cir. 2001). Therefore, the principle of collateral estoppel does not automatically operate to render a Chapter 93A judgment nondischargeable, because it would be possible under the same set of facts to find a violation of Chapter 93A for misconduct which lacks the elements of nondischargeability. *See* <u>Harb v. Toscano (In re Toscano)</u>, 23 B.R. 736 (Bankr. D. Mass. 1982); *see also* <u>Commonwealth v. Hale</u>, 618 F.2d 143 (1st Cir.1980) (default judgment based upon debtor's Chapter 93A violations did not provide basis for application of the doctrine of collateral estoppel to determine nondischargeability in bankruptcy where state court record lacked any express findings on those issues relevant to nondischargeability). Neither misrepresentation nor fraud are a necessary component of a state court's judgment for Chapter 93A violations. Moreover, in a Chapter 93A action, it is unnecessary for a plaintiff to establish that the defendant knew his allegedly deceptive representations were false or to prove actual reliance upon the defendant's representations. *See* <u>Slaney v. Westwood Auto, Inc.</u>, 366 Mass. 688, 322 N.E.2d 768 (1975); *see also* <u>Rivers Edge Condo. Homeowners Ass''n v. Cohen (In re Cohen)</u>, 370 B.R. 26 (Bankr. D. N.H. 2007).

<u>Stanley-Snow</u>, 405 B.R. at 22.

The Plaintiff's judgment for attorney's fees under ch. 93A does not equate to a violation of either § 523(a)(2)(A) or § 523(a)(6).

C. <u>Failure to State A Claim upon which Relief Can Be Granted</u>

Although the Defendant did not move to dismiss the Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b), he did raise the issue of the

Complaint's viability in his first affirmative defense. The Court informed the Plaintiff about the deficiencies of her Complaint at the October 19, 2011 hearing. Additionally, the Court afforded the Plaintiff the opportunity to submit an Affidavit. The Court finds that the contents of the Plaintiff's Affidavit do not cure the deficiencies of her Complaint and, therefore, do not warrant affording her leave to file an amended complaint.

The Plaintiff's Complaint presents an issue of whether it satisfies the legal standard applicable to motions to dismiss set forth in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009). In that case, the Supreme Court amplified its discussion of the standard for dismissal contained in Bell Atlantic Corp. v. Twombly, 550 US. 544 (2007), a decision in which the Supreme Court modified the long-standing test set forth in Conley v. Gibson, 355 U.S. 41 (1957), for evaluating whether a complaint should survive a motion to dismiss. The Supreme Court in Iqbal stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant unlawfully harmed me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127S.Ct 1955. Nor does a complaint suffice if it tenders "naked assertion [s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556,

17

>
> 127 S.Ct 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Iqbal, 129 S.Ct. at 1949.

The Court finds that the Plaintiff's Complaint fails to state plausible claims for relief under either 11 U.S.C. § 523(a)(2)(A) or (a)(6). The Plaintiff's claims arise out of breach of contract. Although the Plaintiff legitimately is aggrieved by the Defendant's conduct, not every breach of contract rises to the level of fraud or an intentional tort so that an exception to discharge results. Moreover, the Plaintiff's situation is simply not analogous to the case of Vaks v. Grenier (In re Grenier), No. 06-14825-JNF, 2009 WL 763352 (Bankr. D. Mass. March 19, 2009), which she cites. In that case, the contractor made false representations that he was a registered home improvement contractor, which led to a criminal conviction; that he had paid for supplies and materials with payments he had received from the Plaintiffs; and that he was holding money on their behalf for future purchases of materials and supplies; and that they had bounced a check which they had given to him, requiring a replacement check. Those types of egregious misrepresentations were not established in this case.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Defendant's Motion for Summary Judgment. Even accepting all the Plaintiff's allegations in her

18

Complaint as true, as well as the allegations in her Response to the Defendant's Motion for Summary Judgment and her Affidavit, those allegations do not create any genuine issues of material fact that would preclude the entry of summary judgment.  The Court is compelled to find that the Plaintiff has failed to satisfy her burden of establishing the existence of genuine issues of material fact.  Thus, the Defendant is entitled to judgment on both counts of the Plaintiff's Complaint.

Alternatively, the Court finds that the Plaintiff failed to satisfy the legal standard applicable to withstand dismissal of her Complaints for failure to state claims that are facially plausible, particularly with respect to her claim that the Defendant intended to willfully and maliciously injure her or the Property.  *See* <u>Ascroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009).  Accordingly, even were the Court to reserve a decision on the Motion for Summary Judgment, the Court would enter an order dismissing the Complaint for failing to state claims for relief that are facially plausible.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 16, 2011